———o———

No. 7091.

## JOHN E. HART v. MOHAWK MOTOR CORPORATION.

### Syllabus.

Involves only issues of fact.

Appeal from the 29th Judicial District Court, Parish of St. Bernard, No. 1071. Honorable Robert E. Hingle, Judge. Affirmed.

429

Fred. A. Ahrens and L. H. Burns, for plaintiff and appellee.

Oliver S. Livaudais, for defendant and appellant.

His Honor, JOHN ST. PAUL, rendered the opinion and decree of the Court, as follows:

This is a suit for a balance due on an alleged claim for salary and involves only a question of fact.

It is not denied that plaintiff was in the employ of defendant and during the time for which he claims compensation, but the defense is that plaintiff was not to receive a fixed salary, but only such gratuities as defendant might from time to time feel able and willing to allow him.

Plaintiff testifies affirmatively and positively that he was employed at the rate of $100 per month, and in this he is corroborated by the following circumstances:

1. A resolution of defendant's Board of Directors, reading as follows:

> "Whereas, J. E. Hart, a building contractor, has expressed his earnest desire to become associated with this company, and believing in its future possibilities, is willing to co-operate with the officers without becoming a burden to the organization, therefore be it
>
> "Resolved, That the Board approve the action of President Davis in creating the position of General Superintendent, and the selection of Mr. J. E. Hart to fill that position. Said Hart in furtherance of his earnest intentions to co-operate with the officers of this corporation agrees to limit his cash demands to necessary personal expenses and said demands shall be payable as available cash permits, and at no time shall exceed in the aggregate the sum of $100 in any one month."

430

2. The testimony of defendant's bookkeeper that he was directed by defendant's president to do so, and did in fact credit plaintiff monthly on the books of the corporation with a salary of $100.

3. A statement issued to the stockholders and to the public, showing the financial condition of the company on May 31st, 1916, upon which plaintiff appears as a creditor of the corporation for the amount of his salary then unpaid; which statement is signed by the president and secretary of the company.

On the other hand, the president and secretary of the defendant company testify equally positively that plaintiff was entitled to no other compensation than that which the officers of the company might choose to allow him; that the sum of $100 fixed in the resolution above set forth meant nothing unless it were to check their own liability to plaintiff; and that the statement aforesaid was issued, and the books made to show plaintiff a creditor, only for the purpose of "**protecting**" plaintiff against other creditors.

To make a long story short, these defendants try to explain away the very obvious meaning of all the documentary evidence against them; but their explanations satisfy us no more than they satisfied the District Judge.

We think the judgment appealed from correct.

Judgment affirmed.

Opinion and decree, June 30th, 1917.

---

Dissenting opinion, CHARLES F. CLAIBORNE, Judge:

This is a suit for salary. The petitioner alleges that on October 1st, 1915, he was engaged by the defendant as en-

gineer at a salary of $100 per month to build and operate a factory on lands of defendant; that he worked in the construction of the building and in assembling three automobile chassis up to October 31st, 1916, a period of thirteen months; that he received on account of his wages $482.50, leaving a balance due of $817.50.

The defendant answered denying any indebtedness to the plaintiff; it denied employing him as engineer, but admitted his employment as general superintendent; it admitted that plaintiff worked on the building but denied that he worked on the chassis; it admitted payment of the amounts above mentioned, and alleged that they were a payment in full of all sums due him as wages according to the terms of his employment, which were as follows:

> "that during the period of time between October 1/15 to October 1/16 this respondent corporation began preparation of the lands owned by it for the establishment of an automobile factory or assembling plant * * * that the plaintiff was fully aware of the speculative character of employment which he entered during said year of preparation; that he agreed with respondent to accept the precarious service incidental to the establishment of said business as a going concern; that his employment with petitioner was not reduced to writing; that his employment was contracted by verbal agreement with respondent, through J. Bart Davis, President, and John Markel, Secretary, the terms of which were that in consideration of his continuous employment, after the manufacturing business would begin, he would accept precarious employment and payment of same on such terms and at such times as the corporation might be able to pay him, the condition of its affairs considered; that he well knew that this respondent corporation was not able to pay him a full regular salary; that it was

agreed, however, that after the establishment of the business and then only was he to get a salary of $100 per month, taking such payment during the preliminary period above described as the company might be able to make him; that at the time said contract of employment was made it was agreed to and fully concurred in by him, and that he, the said plaintiff, knew full well that he was to receive not more than $100 in any current month, and that he was to receive any fractional part thereof that the Company might be able to pay him during said period; that, therefore, by the payment of the $482.50 hereinabove recited, this Company is not indebted to him in any further sum whatever."

There was judgment for plaintiff and the defendant has appealed.

The first difficulty to be solved is, what were the terms of plaintiff's employment?

Plaintiff's attorney put the following questions to John G. Merkel, the Secretary and Treasurer of the defendant Company:

Q. Wasn't there a resolution passed authorizing Mr. Davis to employ Mr. Hart?
A. Not at $100 a month.
Q. You say you are the Secretary?
A. Yes.
Q. You say you can produce the books?
A. I say I can produce the books.
Q. I say, do the books show that he was authorized to employ him?
A. Not at $100 a month.
Q. I didn't say $100 a month. I say, do the books show that they authorized to employ him?
A. Yes.

"Mr. Livaudais: It is agreed that the books mentioned by this witness are to be produced to be

433

used, copies or extracts to be taken therefrom to be filed in evidence in lieu of the books."

The following is an extract of the minutes of the trial Court of January 15th, 1917:

"This case regularly fixed came up today for argument.

"Present: L. H. Burns, of counsel for defendant.

"Absent: Oliver S. Livaudais, attorney for plaintiff.

"In the absence of Mr. Livaudais, attorney for defendant, Mr. L. H. Burns, produced the minutes of the corporation called for and agreed to furnish a certified copy of page 74 of same, and thereupon submitted the case on the record."

A copy of the resolution was produced and delivered to the Clerk of Court for filing and is in the following words:

"Extract from minutes of meeting of the Board of Directors of the Mohawk Motor Corporation, held at their office in the City of New Orleans October 10th, 1915.

"Whereas, J. E. Hart, a building contractor, has expressed his earnest desire to become associated with this company, and believing in its future possibilities is willing to co-operate with the officers without becoming a burden to the organization, therefore be it

"Resolved, That this Board approve the action of President Davis in creating the position of General Superintendent and the selection of Mr. J. E. Hart to fill the position. Said Mr. Hart in furtherance of the earnest intentions to co-operate with the officers of this corporation agree to limit his cash demands to necessary personal expenses, and said demands shall be payable as available cash permits and at no

434

time shall exceed in the aggregate the sum of $100 in any one month."

It is immaterial whether Mr. Hart was aware or not of this resolution as far as the Corporation is concerned. It fixed the limit of Davis' authority to bind the Corporation. If he went beyond this authority, it became a matter between him and Mr. Davis. C. C. 3010 (2979); 3012 (2981); 3013 (2982).

But there is evidence that Mr. Hart knew of this resolution. He testifies:

> "The term of employment was a verbal agreement between Mr. Davis and myself. We met in Mr. Davis' office in the morning, I should say, about eight o'clock. No one else was present but myself and Mr. Davis. He proceeded to outline the possibilities of the automobile industry, the automobile business in general, and this particular company, and painted a very rosy future. He first showed me a resolution from the minutes, where he had full authority to make the contract with me."

The sole question then remains, did the above resolution authorize Mr. Davis to employ the plaintiff at a rate of $100 a month, and did he do so as plaintiff alleges; or, as the defendant contends, did the plaintiff take the chances of the success of the venture and agree to limit his cash demands to necessary personal expenses payable as available cash would permit, at no time to exceed $100 per month?

The testimony and the conduct of the parties are the best interpreters of the contract.

Plaintiff testifies, after relating the conversation quoted above, that Mr. Davis told him that while he and Mr. Merkel and Mr. Francis had money, that the company had very

little, but that they would be able from the sale of the stock, notes, etc., to pay him and the pay rolls; that by February they would have all the money they would require, but between October 1st and February they would only be able to pay him $100 a month, but from February on, they would give him $250 a month, and as soon as they got their car on the market they would increase that to $100 a week; he also agreed to give him $2,000 of stock from his personal holdings, which he never got; he often made demand of Mr. Davis for his salary of $100 but was referred to Mr. Merkel; $100 was less than he could get elsewhere, but he agreed to work for that amount until February, because of the promise that he would get $100 a week after that time; he did not sue for the stock because he did not think it was worth much; Mr. Davis and Mr. Merkel always promised to pay him in full, otherwise he would quit; he made the plans for the building; it was begun in November, 1915, and completed in August, 1916; it should have been completed in 60 days; the reason of the delay was want of materials and sometimes there was nobody at work, and there were only two men employed to assist him because the company had not sufficient money to hire all the men needed; in August three automobile chassis came into the building, that is the frame of an automobile, or everything except the top and bottom; he put them together with the assistance of some boys; his instructions were to appear to be busy by taking them down and putting them up again; he never worked for $100; when he was a boy, when he first left college, he got more than that; he was out of employment when he went to work for the defendants; previous to that he worked in Honduras; he has been out of employment since he left the defendant, though he turned down the offer of a job because he had to come to Court;

the following memorandum made by him shows how he was paid:

```
  1915—
October  30  ................         $50.00
November 18  .............. $25.00
November 30  .............. 25.00—     50.00
                           _____
December 17  ..............  2.00
December 20  .............. 25.00—     27.00
                           _____
  1916—
January  4  ...............           77.00
February 3  .............. 50.00
February 17 .............. 20.00—      70.00
                           _____
March  3  ................  5.00
March 11  ................ 25.00
March 25  ................  1.00
March 28  ................  1.00—      32.00
                           _____
April  5  ................  5.00
April  8  ................ 20.00
April 19  ................ 25.00
April 27  ................   .50—      50.50
                           _____
May  6  ..................  5.00
May 16  ..................  5.00—      10.00
                           _____
                                      $366.50
Balance due for 8 months..             433.50
                                      _____
                                      $800.00
                                      _____
                                      $366.50
July 15  .................  5.00
July 17  ................. 25.00
July 31  ................. 20.00—      50.00
                           _____
```

437

```
August  15 ...............  10.00
August  29 ...............  10.00—   20.00

September  1 .............  25.00
September  9 .............  10.00
September 18 .............  11.00—   46.00

                                    $482.50
Balance due for 13 months..          817.50

                                  $1,300.00
```

Plaintiff offered in evidence an annual statement of the defendant company's accounts showing an indebtedness to plaintiff on May 31st, 1916, of $433.50. There was no other witness or evidence for the plaintiff.

J. Bart Davis, President of defendant company, was asked:

Q. Tell the Court what was the explicit agreement with Mr. Hart about his salary?

A. Mr. Hart was employed to take charge of this work down at Violet  *  *  * by his own specified agreement with me, it was understood that his name was not to go on the payroll.

Q. Now, did he ever demand a hundred dollars a month from you during his employment?

A. Never.

Q. When did he first claim that he was getting $100 a month?

A. He never has told me that.

Q. What was the contract you made with Mr. Hart? What were you to give him?

A. What he could get.

Q. What was that?

A. Anything that the company could afford to pay.

Q. And there was no amount fixed?

A. No, sir, that is we were not to give him ex-cess of $100 a month. * * * After many, many conferences, we decided to let him to go work, and we would pay him only what we could afford to pay him .

Q. And what was he to get?

A. What he could get. As you put it, if he got $5.00, it was all right. If he got $10, it would be $10 * * * I made the statement to Mr. Liv-audais, that Mr. Hart was employed at a compensa-tion not to exceed $100 a month, and he was not to get any more money than the company could afford to give him from time to time, and his demands on us have been for such little amounts as his necessi-ties required from time to time. I will swear that he never asked me for any compensation at the rate of $100 per month except in this suit.

He explains this credit of $433.50 in favor of plaintiff as follows:

"If some one had come down here and tried to put the company out of business, I have always figured that the property was worth far in excess of what we paid for it, and in case of any trouble there would have been some cash assets, and that was to protect us in the division of the money. Mr. Hart would not have gotten all this money, but he would have gotten his share with Mr. Merkel and myself."

John C. Ricks was the bookkeeper of the defendant; he was to be paid whenever the company had money to pay him; his salary was not stipulated; he received different amounts each month, he had no knowledge of the agreement of Mr. Hart with the company as to salary; he kept an account in the name of Mr. Hart; he credited his account with $100 a month in accordance with Mr. Davis' instruc-tions; no account was entered in his own name because

439

he was on the payroll each month for whatever he could get, five, ten or $20 as Mr. Davis would tell him; he put $433.50 to the credit of Mr. Hart on the statement ending May 31st, 1916, because that was on the books; he began work in April, 1916, and was instructed to open an account in the name of Mr. Hart.

John G. Merkel, the secretary and treasurer of defendant company, testifies that he never received a regular salary, and says:

> "I was going up in the elevator in the Hibernia Building and met Mr. John Edwin Hart at the intersection of the hallway on the fifth floor, and he informed me that he had spoken to Mr. Davis, and that he had become connected with the company, and in a general conversation he gave me, that is, he told me he was going to be general superintendent, and I said 'all right.' I said, 'you know how you are going to be employed.' He said '$100 a month', and I said $100 a month. We can't afford to pay you $100 a month or anybody else. If you want to come and help pull this thing through, you can come in on these conditions,' and he understood it, he admitted that he knew we couldn't pay him $100 a month."

Q. How was he to be paid?
A. Well, he was to be paid whenever the funds were available.
Q. In what amounts?
A. No specific amounts. I paid him from a nickle up.
Q. Did you do the paying?
A. I paid him most of the time, yes; other times I loaned him my money personally.

In explanation of the item of $433.50 on the statement of May 31st, 1916, he says:

440

"This was put in there for Mr. Hart's own protection * * *. In the event we couldn't fulfill the contract with the Borgne-Mouth Realty Company, for which Mr. Livaudais is the attorney, why he had a chance to get something out of it, and he knew all the time why that was done.

Q. Did he have any right to it?

A. No, he didn't have any right to it.

Q. In putting it in there, did you recognize that he had a right to that amount of money?

A. If we made good in the future and we saw fit to pay him, yes, sir.

Q. Did he make demand on you for salary at the rate of $100 per month at any time?

A. Never has.

Q. What demand did he make on you?

A. Why he said he needed a little money, if I could let him have it.

Q. And how did you pay it to him?

A. I gave it to him, if we had it, if we didn't have it * * *.

There was no account kept in his name up to the time Mr. Ricks came into service * * *. If the company made more, we would give it to him, but not more than $100; he was not to draw more than $100 a month at any time; the first time he heard of $250 was to-day.

Upon the argument of the case plaintiff's attorney stated emphatically that his client was not aware of the resolution of October 10th, 1915, approving the action of the president in selecting plaintiff as General Superintendent and fixing his compensation, and that his cause of action was not based upon the resolution, but upon the verbal agreement of employment made with the president, Davis. Inasmuch as he declares upon an agreed salary of $100 per month, the burden of proof was upon plaintiff to establish it. Davis denies that he ever agreed to pay plain-

tiff $100 per month, and states different terms of employment. Plaintiff must fail for want of proof, unless his testimony is corroborated by facts and circumstances elicited in the trial. All contracts above $500 in value must be proved at least by one credible witness and other corroborating circumstances. C. C. 2277 (2257), 117 La., 711.

We think on the contrary that Davis' testimony is strongly corroborated and supported by those facts. In the first place the resolution of October 10th, 1915, a document contemporaneous with the period of plaintiff's employment at a time unsuspicious, is presumed to contain the truth. By that document plaintiff desired "to become associated" with the defendant company without "becoming a burden to it, sharing its good or bad fortune; he was "to limit his cash demands to necessary personal expenses * * * payable as available cash would permit" at no time to exceed $100 a month; the title of "General Superintendent" was given to plaintiff for effect only; all he superintended during his thirteen months' connection with the defendant was the construction of a building to house the automobiles at a cost of $6000, an ordinary construction which could have been put up in sixty days and the assembling of three automobile chassis; the company never did any business and never made any money; it will not be presumed that defendant agreed to pay a flat price of $100 a month for thirteen months for such work; the manner in which plaintiff was paid in numerous installments of small amounts; the fact that the bookkeeper and secretary-treasurer were paid in the same manner; the failure of plaintiff to make demand for a salary of $100 at the end of each month, all cast uncertainty upon his demand. Plaintiff himself was uncertain as to the amount of his claim. For, while he sues for $100 a month, he testifies that he was employed at

442

that rate only up to February, but after that he was to be paid $250 a month and receive $2000 of stock and as soon as they got a car on the market his salary was to be increased to $100 a week.

There is no evidence in corroboration of plaintiff's testimony, on the contrary it is denied by his associates, Davis and Merkel. The only support which plaintiff receives is in the statement of May 31st, 1916, crediting him with $433.50. Both Davis and Merkel explain that under certain circumstances, plaintiff would have become entitled to that amount, and they wished to protect him in that event.

New Orleans, La., June 30th, 1917.